655 So.2d 898 (1995)
George C. HARRIS, Sr.
v.
CANTON SEPARATE PUBLIC SCHOOL BOARD OF EDUCATION.
Nos. 90-CC-01288-SCT, 90-CC-01294-SCT.
Supreme Court of Mississippi.
May 11, 1995.
*899 Bruce C. Harris, Jackson, Walter E. Wood, Ridgeland, for appellant.
John W. Christopher, Ridgeland, for appellee.
EN BANC.

ON PETITION FOR REHEARING
JAMES L. ROBERTS, Jr., Justice, for the Court:
The original opinions are withdrawn and these opinions are substituted therefor.
In February of 1989, George C. Harris, Sr. was fired as principal of the Nichols Middle School in Canton, Mississippi, by Canton School District Superintendent Joe Galloway. In March, Galloway recommended that Harris' employment contract not be renewed. The Canton School Board voted to uphold Galloway's decisions, and the Madison County Chancery Court affirmed. For reasons below, we affirm in toto.

I.

FACTS AND PROCEDURAL HISTORY

Termination
On February 3, 1989, George Harris, principal for twenty-three years of the Nichols Middle School in Canton, Mississippi, was hand-delivered a letter advising Harris he was dismissed as a certified employee of the Canton Public School District, effective at 5:00 o'clock P.M. on Friday, February 3, 1989. The termination was because of a reported physical assault upon Mrs. Annie Houston, on Wednesday, January 25, 1989, in the City of Jackson and by further threatening to kill Mrs. Annie Houston on Monday, January 30, 1989, while she was at the McNeal Elementary School in her assigned task as a teacher of the second grade.
This letter executed a decision made by Superintendent Galloway earlier that day after a confidential hearing that morning attended by Houston, School Board Attorney John Christopher, and Galloway. At this hearing, Christopher questioned Mrs. Houston about the allegations she made against George Harris to Galloway several days prior.
Pursuant to Miss. Code Ann. § 37-9-59 (Supp. 1991), a public hearing was held on February 28, 1989, before the Canton School Board. Mrs. Annie Houston, a second grade teacher at McNeal Elementary School for fourteen years, and teacher in the Canton School system for nineteen years, testified about two incidents she alleged took place between her and Harris.
The first incident occurred on Wednesday, January 25, 1989. Upon returning to her home in Jackson, Houston testified, she saw *900 Harris outside her house.[1] She asked him not to park behind her car, because she would not be staying long. He asked her how long she would be. When she replied that it "wasn't his business," Harris grabbed her, and threw her against the car, causing bruises.
According to Houston, the second incident occurred on the following Monday, January 30, 1989, when she encountered Harris on her way to work in Canton. Upon returning home at approximately 6:30 a.m. from her mother's house in Charleston, she saw a car she thought belonged to Harris parked in the street near her house; someone was in the car, but she could not see who it was. She did not go into her home. Harris then followed her from Highway 22 to the McNeal school, and as she was walking from her parked car to the school building, he said (from his car) that "he was going to kill (her) before the night was up." When asked if Harris had any reason to threaten her, Houston responded, "none that I know of." Houston said that she then went into the building, and spoke with Mrs. Scott, the principal at McNeil. She told Mrs. Scott she had been threatened, but did not say by whom. Mrs. Scott then asked if it was George Harris, and Houston said that it was. Houston said that she did not want to go see Superintendent Galloway, but that Mrs. Scott insisted. Houston then went to Galloway's office, told him that Harris had threatened her life, and asked for a leave of absence. Shortly after she spoke with Galloway, Harris called her at the school, and said "I need to talk to you."
Alice Scott, the principal of McNeil Elementary, testified in support of Houston's testimony. Dr. Galloway, superintendent of the Canton Public Schools for a year and a half at the time of the hearing, also testified about the events in Houston's testimony as told to him by her and other witnesses. George C. Harris, Sr. testified that he had not seen Houston on January 25, 1989, in Jackson, nor had he assaulted her then, or ever. He denied that he had threatened Houston's life on January 30, 1989, or at any time.
Harris testified that at 6:30 a.m., January 30, 1989, he had been at home with his wife, a Media Specialist in the Canton schools. They drove to work, and after dropping his wife off at Canton Elementary, Harris conferenced with students and parents at his office until about 8:00 a.m.[2] He then received a call that some of his students were at the laundromat at the trailer park. He went to investigate, and found the students. He then decided to visit the Stop 'n Go at the intersection of Fulton and Highway 22 for some cough drops. It was then, Harris testified, that he saw Houston.
Harris testified that he saw Houston drive by as he was leaving the Stop 'n Go and noticed a lot of smoke coming from her car. He then followed her to try and stop her to inform her of the potential car problems. According to Harris, his following her and what was said was just a major misunderstanding. He said that he was trying to help and she said that he said that he was going to kill her. On cross-examination, Harris was asked if he had ever been romantically involved with Houston. He refused to answer the question.
The Board voted to uphold Galloway's recommendation to dismiss Harris. In a letter dated March 1, 1989, the chairman of the School Board stated that "the more credible evidence proved" that he had assaulted Houston on January 25, 1989, and that on January 30, 1989, he had threatened Houston *901 on school property during their hours of employment.
On March 20, 1989, Harris filed an appeal in the Madison County Chancery Court pursuant to Miss. Code Ann. § 37-9-113. The Chancellor found that the evidence supported Harris' dismissal, and affirmed the Board's termination.

Non-Renewal
In a letter dated February 16, 1989, Galloway advised Harris that he had not been recommended for reemployment for the 1989-1990 school year. A letter to Harris' counsel dated March 10, 1989, from Board Attorney John Christopher stated six specific reasons for nonreemployment ranging from those involving Houston to lack of managerial control. At a hearing held March 21, 1989, Galloway and other witnesses were questioned concerning these allegations.
A letter dated March 27, 1989, informed Harris that the Board had voted to affirm the superintendent's non-renewal of his contract. The letter stated that the Board felt that the allegations of the attacks on Houston were sufficient cause for non-renewal, given the Board's previous termination for cause. Even disregarding the above, the Board felt the other allegations were substantiated in whole, or in part, and taken apart from the attacks substantiated the non-renewal.
Harris appealed the Board's decision of nonrenewal on April 17, 1989. On October 11, 1990, the Chancellor affirmed the board's decision. The judgments against Harris in his appeals of the termination and non-renewal were rendered final on November 9, 1990.

II.

The Law of Termination
Dismissal of certificated school employees is governed by Miss Code Ann. § 37-9-59 (Supp. 1992), which provides good cause reasons for dismissal as well as the right to a public hearing. See Hoffman v. Board of Trustees, 567 So.2d 838, 842 (Miss. 1990); Merchant v. Pearl Municipal Separate School District, 492 So.2d 959, 963 (Miss. 1986). Section 37-9-59 further provides that the hearing procedures for such dismissals are those set out in Miss. Code Ann. § 37-9-111. See § 37-9-59; Merchant, 492 So.2d 959, 961 (Miss. 1986).
Miss. Code Ann. § 37-9-111(4) provides for a hearing before the school board (or a hearing officer), at which the employee may "present matters relevant to the reasons given" for the board's decision, present witnesses and other evidence on his own behalf, and cross-examine the witnesses against him. The statute further provides that the school board can base its decision solely on the matters presented before it and notify the employee in writing of its final decision.
Under Miss. Code Ann. § 37-9-113, an employee aggrieved by a final decision of the board may appeal to the chancery court. This statute mandates the chancellor's standard of review as follows:
The scope of review of the chancery court in such cases shall be limited to a review of the record made before the school board ... to determine if the action of the school board is unlawful for the reason that it was:
(a) Not supported by any substantial evidence;
(b) Arbitrary or capricious; or
(c) In violation of some statutory or constitutional right of the employee.
See Harrison County School Board v. Morreale, 538 So.2d 1196, 1201 (Miss. 1989). On appeal of the Chancellor's decision, this Court applies the same standard of review. Spradlin v. Board of Trustees of Pascagoula Municipal Separate School District, 515 So.2d 893, 898 (Miss. 1987).
We proceed to Harris' first assignment of error:
I. THE CHANCELLOR ERRED IN MAKING A FINDING THAT THERE WAS SUBSTANTIAL AND CREDIBLE EVIDENCE ESTABLISHED IN THE RECORD TO SUPPORT APPELLANT'S DISMISSAL BY THE CANTON SEPARATE MUNICIPAL SCHOOL BOARD.
Houston and Harris gave directly conflicting testimony regarding the alleged *902 assaults. At a board hearing on termination, the burden rests on the superintendent to prove by a preponderance of the evidence adequate grounds for dismissal. Merchant, 492 So.2d 959, 961 (Miss. 1986). If there is substantial, credible evidence undergirding the school board's finding of fact, those findings may not be disturbed on appeal. Noxubee County Board of Education v. Givens, 481 So.2d 816, 819 (Miss. 1985).
According to the termination letter sent by the Board to Harris, the "more credible evidence proved" he had assaulted Houston on January 25, and threatened her life January 30, 1989. Apparently, after the "he said/she said" drama of the hearing, the board chose to believe Houston. Where there is a conflict of testimony presented to the board, the board is entitled to determine which testimony it will give the most weight. Everett v. Board of Trustees of the Meridian Municipal Separate School District, 492 So.2d 277, 283 (Miss. 1986). Certainly the Board was in a position, as neither the Chancellor nor this Court can be, to evaluate the demeanor of the witnesses at the hearing, and it is this Court's policy to accord great weight and deference to school administrators when their discharge of responsibilities is challenged. Noxubee County Board of Education v. Givens, 481 So.2d 816, 819 (Miss. 1985).
"Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred." Central Electric Power Association et al. v. Hicks, 110 So.2d 351, 357 (Miss. 1959); See also Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). It is something more than a "mere scintilla" of evidence, Johnson v. Ferguson, 435 So.2d 1191 (Miss. 1983), and does not rise to the level of "a preponderance of the evidence." Babcock & Wilcox Co. v. McClain, 149 So.2d 523 (Miss. 1963); See also Delta CMI v. Speck, 586 So.2d 768, 773 (Miss. 1991).
In sum, the evidence in the record that Harris assaulted Houston on January 25th and threatened her on January 30th is "substantial", being more than a mere scintilla and providing reasonable inferences therefrom. Accordingly, the Board and the Chancellor did not err in finding that there was substantial evidence which more probable than not supported the superintendent's termination of Harris. Therefore, we affirm.
II. THE CHANCELLOR ERRED IN HIS FINDINGS THAT APPELLANT'S DUE PROCESS WAS NOT VIOLATED PURSUANT TO THE FOURTEENTH AMENDMENT AS A RESULT OF AN IMPARTIAL AND BIASED HEARING CONDUCTED BY THE CANTON SEPARATE MUNICIPAL SCHOOL BOARD.
Harris, a public employee under contract at the time of his dismissal, had an expectancy in continued employment at least through June 19, 1989, when his contract was due to expire. That is, he had a property interest in his continued employment with the school district. Spradlin v. Board of Trustees of Pascagoula School District, 515 So.2d 893, 897 (Miss. 1987); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Therefore, Harris was entitled to the protections of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, and Section 14 of Miss. Const. Art. III (1890). Hoffman v. Board of Trustees, East Mississippi Junior College, 567 So.2d 838, 840 (Miss. 1990); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The process that is due is set out in Miss. Code Ann. § 37-9-111. See Spradlin, 515 So.2d at 898.
There is no question that the Board complied with the procedural requirements of Miss. Code Ann. § 37-9-111 in providing Harris with a properly noticed and timely hearing. Harris' due process claim concerns the nature and origin of the evidence presented against him. The Board argues that it provided an impartial and unbiased forum in which to hear Harris' cause, in that none of the board members participated in the investigation of the matter (i.e., none attended the meeting on the morning of February 3, 1989, at which Houston's statement was taken), nor did they participate in Galloway's decision to terminate Harris.
*903 In considering due process claims by employees appealing terminations, this Court has held that there is a "presumption of honesty and integrity" in board members serving as adjudicators in conducting hearings and rendering decisions on employee dismissals. Spradlin, 515 So.2d at 898; Dampier v. Lawrence County School District, 344 So.2d 130, 132 (Miss. 1977), citing Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). In order to rebut this presumption, the dismissed employee must show that the board members had a personal or financial stake in the decision, or that there was some personal animosity toward him. Spradlin at 898; Dampier, at 132, citing Hortonville Joint School District No. 1 v. Hortonville Educational Association, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976).
At the February 3rd meeting, Houston was reluctant to discuss the incidents she had reported to Galloway, responding to questions, "I'd rather not say." At this point, board attorney John Christopher stated:
I want to make sure that you understand that your failure to cooperate with the Board in finding out what happened could lead to your being terminated as a teacher in the system. That is not what the Board is interested in, that is not their choice at this point. But you still don't want to cooperate with us and tell us what happened?
In sum, the only evidence to support Harris' allegation that Houston's testimony was coerced is the statement of the Board's attorney above. It could be inferred from Houston's reluctance to speak at the meeting and from her affidavit that she felt compelled to testify or lose her job. However, we find that this "evidence" of coercion is insufficient to overcome the Board's presumption of integrity. Therefore, we find that the procedures surrounding Harris' dismissal were not "tainted," as Harris claims, and that no violation of his due process rights occurred.

III.

Law of Non-renewal
Where a school district decides not to renew an employee's contract, written notice is required under § 37-9-105. Noxubee County School Board v. Cannon, 485 So.2d 302 (Miss. 1986) Further, § 37-9-109 provides that a nonrenewed employee is entitled to four specific provisions. See Cox v. Thomas, 403 So.2d 135 (Miss. 1981). As with a dismissal under § 37-9-59, the hearing procedures for a non-renewal decision are governed by § 37-9-111. DeSoto County School Board v. Garrett, 508 So.2d 1091 (Miss. 1987). And as with a dismissal, a non-renewed employee aggrieved by the final decision of the board may appeal to the chancery court under § 37-9-113. Again, the chancellor's (and this Court's) scope of review is limited to determining whether the board's action was 1) not supported by any substantial evidence; 2) arbitrary or capricious, or 3) in violation of some statutory or constitutional right of the employee. Claiborne County Bd. of Educ. v. Martin, 500 So.2d 981, 984-85 (Miss. 1986).
While the procedures for nonrenewal and dismissal are essentially the same, this Court has established that there are substantive differences in the rights afforded to a dismissed and a nonrenewed employee. M.E.S.C. v. Philadelphia Municipal Separate School District of Neshoba County, 437 So.2d 388, 393, n. 4 (Miss. 1983).
We believe that the statutory provisions and case law must be read together, and effort made to harmonize the two. We therefore look to the requirements of both in considering whether the nonrenewal of Harris' contract was properly upheld by the Chancellor. That is, in reviewing a nonrenewal decision, our inquiry concerns (under the case law) whether the decision was made for a reason not specifically prohibited by law, and in accordance with the applicable procedural requirements, and (under the statute) whether the nonrenewal decision is supported by substantial evidence, and was neither arbitrary nor capricious.
The grounds for dismissal which this Court has found to be "prohibited by law" have been limited to constitutional grounds. Harris has shown no violation of his First Amendment or other constitutional rights. There is no question that he was provided with all process he was due under the School *904 Employment Procedures Law. Therefore, we find that all requirements set out in this Court's decisions concerning nonrenewal of contracts were met in Harris' case.
III. THE CHANCELLOR ERRED IN HIS FINDINGS THAT THE CANTON SEPARATE MUNICIPAL SCHOOL BOARD'S NON-RENEWAL OF APPELLANT'S CONTRACT WAS NOT UNLAWFUL AND SUCH ACTION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE PURSUANT TO SECTION 37-9-113(3)(a), MISSISSIPPI CODE ANNOTATED (SUPP. 1991).
Harris contends that there is insufficient evidence regarding each of the grounds cited by the board to justify his nonrenewal, and that the board failed to carry its burden of proof. Harris states that "the burden of proof rests upon the shoulder of the superintendent to support his case by a preponderance of the evidence." While this is a correct statement as pertaining to dismissal proceedings, it is not the law involving nonrenewals.
Where a board declines to rehire a school employee, it must provide a demonstrable reason for its decision. Once the board has provided a reason, the employee must, to prevail, prove that such reason is without factual basis as the Court explained in Calhoun County Board of Education v. Hamblin, 360 So.2d 1236, 1240 (Miss. 1978), in which it reinstated a school board's decision not to renew a principal.
It is because Harris did not meet his burden of proof that his nonrenewal claims must fail. This can be seen by addressing the first reason for nonrenewal cited by the board, the alleged assault and threat against Houston. For purposes of sustaining Harris' dismissal, the board was required to show by a preponderance of the evidence that Harris' had in fact assaulted and threatened Mrs. Houston. The testimony of Harris and Houston concerning the events of January 25 and January 30, 1989, were in direct conflict, but the Board decided, as it was entitled, to hold that Houston's was more credible. The Board met their preponderance burden.
For purposes of nonrenewal, the burden was no longer on the Board; it was on Harris to show that the Board's reason "had no basis in fact." This Harris could not do. He could continue to insist that he neither threatened nor assaulted Houston, but as long as there was conflicting testimony from other witnesses (Houston, Scott, Galloway) that the Board could, in its discretion, choose to believe, Harris was unable to prove "affirmatively and conclusively" that he did not commit the acts Houston alleges he did. Because Harris failed to carry his burden of proof at the hearing, the board's decision not to renew Harris' contract, affirmed by the chancellor, should not be disturbed.
In sum, Harris carried his burden of proof concerning the allegations of improper use of timecards, inadequate supervision of teachers, and alleged phone calls to Houston. However, Harris failed to carry his burden of proof concerning the allegations that 1) he had assaulted and/or threatened Houston, and 2) his supervision of custodians was inadequate. The Chancellor was correct in upholding the board's nonrenewal of Harris' contract on these grounds, even if the other grounds for nonrenewal are unsupported by evidence.
IV. THE CHANCELLOR ERRED IN HIS FINDINGS THAT THE CANTON SEPARATE MUNICIPAL SCHOOL BOARD'S NONRENEWAL OF APPELLANT'S CONTRACT WAS NOT ARBITRARY AND CAPRICIOUS PURSUANT TO SECTION 37-9-113(3)(b), MISSISSIPPI CODE ANNOTATED (SUPP. 1991).
Harris contends that allegations by the Board that he had violated Board policy on employee working hours, by allowing one employee to leave work early, and by miscoding the absence of another, "not only lacked substance but in essence had no significance."
Freddie Adams, who left the Nichols campus one hour early to attend a second job, testified that he had spoken to Galloway about his situation. Galloway denied speaking with Adams, saying that he had only spoken to Harris about Adams; that an arrangement was made to pay Adams for only seven hours a day, but that Adams' card was *905 still being punched out at 3:30 p.m. Adams testified that his pay was being docked accordingly. No timecards were introduced.
Concerning Mr. Bonds and his time off to attend graduate classes, Exhibit 5 shows that his half-day absence was coded A-1, which according to the superintendent is for personal illness, instead of A-7, professional leave. Galloway testified that Bonds had been given permission to take two days off the prior year to attend classes, but he did not know whether he had been given permission this year. Galloway also said that he did not know how Bonds' absences had been coded the prior year.
In Tanner v. Hazlehurst Municipal Separate School District, 427 So.2d 977 (Miss. 1983), this Court rejected a nonrenewed teacher's argument that the school board's decision not to rehire her was arbitrary and capricious. The Court stated that so long as the Board's decision was not based upon an improper reason, that the Board did not have to justify its decision for nonreemployment. See Calhoun County Board of Education v. Hamblin, 360 So.2d 1236 (Miss. 1978); Tanner, 427 So.2d at 979-980.
Returning to Harris' case, while it may seem unreasonable to base non-renewal of a contract on the miscoding of an employee's (Jonas Bond's) absence, it is not impermissible under this Court's holdings to do so. Therefore, Harris' claim, that the decision of the board not to renew his contract on this basis was arbitrary and capricious, must fail. Similarly, the decision not to renew based on the allegations concerning Freddie Adams was not based on impermissible grounds, and must fail as well. However, concerning Freddie Adams, there is insufficient evidence that any violation of board policy occurred; this prevents any real consideration of this as a grounds for nonrenewal.

CONCLUSION
There was sufficient substantial evidence to support a finding that Harris had threatened and/or assaulted Houston. Therefore, the Board did not err in terminating him on these grounds, and the Chancellor did not err in upholding the board's decision. We affirm the Chancellor's decision on Harris' termination.
Harris received all the process he was due under the School Employment Procedures Law, and he made no showing that his nonrenewal was related to the exercise of some constitutionally protected right. Several of the charges against Harris were insufficiently supported by the evidence; such charges could not be a permissible basis for the Board's decision not to renew his contract.
However, Harris was unable to carry his burden of proof concerning the allegation that he had not assaulted and/or threatened Houston. Additionally, Harris failed to carry his burden of proof concerning the allegations that his supervision of the custodians at Nichols was adequate; this ground may serve as a basis for nonrenewal as well. Finally, Harris failed to show that the Board's decision not to renew his contract was arbitrary or capricious. Accordingly, we affirm the termination, as it was supported by substantial evidence, and we affirm the non-renewal of Harris' contract.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, McRAE and SMITH, JJ., concur.
PITTMAN, J., dissents with separate written opinion.
BANKS, J., not participating.
PITTMAN, Justice, dissenting:
I do not join the majority opinion and would adopt the original opinion and result as previously issued by this Court.
NOTES
[1] Houston testified that at that time, she had been staying with her mother in Charleston, Mississippi, and commuting to her job in Canton. It is unclear whether her choice to commute was related to Harris. At the hearing, Houston gave several reasons for the commute: an attempted break-in to her house, threatening phone calls, and the illness of her mother. She did not say if the threatening phone calls were made by Harris. When asked if Harris had anything to do with her decision to commute from Charleston, she answered "not directly."
[2] Mrs. Harris testified that on the morning of January 30, 1989, she and her husband woke up and rode to work together. She said they left at approximately ten minutes to seven and drove to school, he punching in at 7:22 and she at 7:28. On cross-examination, Mrs. Harris was asked if Mrs. Houston was "a family friend." Her reply: "I think I have spousal immunity to that question."