# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-CT-00164-SCT

*NOVELLA BUCK AND MELDA ROBINSON*

*v.*

*LOWNDES COUNTY SCHOOL DISTRICT*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 01/08/1998 |
| TRIAL JUDGE: | HON. WOODROW WILSON BRAND |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | CHESTER D. NICHOLSON |
| ATTORNEY FOR APPELLEE: | JEFFREY CARTER SMITH |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 02/24/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/16/2000 |

## EN BANC.

## WALLER, JUSTICE, FOR THE COURT:

¶1. The issue on appeal is whether the Lowndes County School District followed proper procedure in refusing to renew the contracts of two of its teachers, Novella Buck and Melda Robinson. Buck and Robinson appealed the non-renewal to the Lowndes County Chancery Court, where it was affirmed. Buck and Robinson then appealed to this Court, which assigned the case to the Court of Appeals. The Court of Appeals reversed and remanded the case, finding that the District had failed to meet its evidentiary burden. *Buck v. Lowndes County Sch. Dist.*, No. 98-CC-00164-COA, 1999 WL 263610 (Miss. Ct. App. May 4, 1999). This Court granted certiorari to consider the question of the propriety of the non-renewal. We reverse and render the judgment of the Court of Appeals and reinstate the judgment of the chancery court.

## STATEMENT OF THE FACTS

¶2. Novella Buck and Melda Robinson were employed as teachers at the Lowndes County School

District's West Lowndes Elementary School. In October, 1995, Buck, with the aid of Robinson, a classroom proctor, administered a standardized test to her fourth grade class.

¶3. In March 1996, the District received a letter from the Mississippi Department of Education regarding possible irregularities in the test answers provided by Buck's students, asking the District to respond to the following finding:

> Results of the Performance Assessment in grade four (4) at West Lowndes Elementary School in Buck's classroom reveal that many identical answers for thirteen (13) items were provided by the entire class. This indicates possible copying of answers or possible coaching or interference with responses.

¶4. The District's response included unsworn written statements from Buck and Robinson denying any improper activity in the administration of the tests. By subsequent letter dated March 29, 1996, the Department notified the District that, based on the available information, including a review of the response, the Department had concluded that the District had "failed to comply with testing regulations established to maintain the integrity of data in the Mississippi Assessment System." Specifically, the Department found that the District had failed to comply with Department policy against "[c]oaching students during testing or altering or interfering with their responses in any way." This finding was based on "[e]vidence that individual students have similar or identical patterns of responses on their tests."

¶5. On April 1, 1996, the Lowndes County Board of Education met to consider renewal of teaching contracts for the coming year. Though both Buck and Robinson had been recommended for renewal by the superintendent, the Board, by a vote of four to one, declined to renew their contracts.

¶6. After Buck and Robinson each received the statutory notice of non-renewal, they requested a hearing on the issue as permitted by law. The Board furnished Buck and Robinson's attorney with statutorially-required pre-hearing written notice of the reasons for non-renewal:

> 1. Testing irregularities brought to the District's attention by the Mississippi Department of Education on March 5, 1996; and confirmed on March 29, 1996, wherein said teachers assisted, coached, and interfered with responses and answers on the ITBS tests in October, 1995 at West Lowndes Elementary School; specifically Novella Buck's fourth grade class.

> 2. Violation of Mississippi Code Section 37-16-4 of the Mississippi Code of 1972, as amended.

¶7. Neither Buck nor Robinson testified at the hearing. The Board introduced the correspondence received from the Department and relied on testimony from Billy Holley, an investigator from the District Attorney's office, who had been assigned to investigate the allegations of testing irregularities. He testified that he had interviewed twenty-three out of twenty-five students in the class, and fifteen had reported activities which appeared to constitute improper assistance to the students. None of the students were called as witnesses.

¶8. Also introduced at the hearing was a letter dated June 14, 1996, from the Department informing Tommy Smith, Lowndes County School Superintendent, that the District's accreditation level had been lowered from "accredited-3" to "accredited-1-probation."

¶9. The actual testing materials were not available at the hearing because the proprietor of the tests had obtained a protective order from the Hinds County Chancery Court adjudicating that the testing materials,

including the students' answers, were exempt from disclosure under the Public Records Act because they were proprietary in nature and contained trade secrets.

¶10. After the hearing, a subsequent order was entered by the Hinds County Chancery Court on June 26, 1996, permitting the District Attorney's office to have access to the testing materials under certain limitations, including the signing of a confidentiality agreement and agreeing not to make photocopies of the documents. Pursuant to this order, Holley performed an ex parte visual inspection of the test material, including the students' answer sheets.

¶11. On July 1, 1996, the District filed a motion to reopen the hearing to permit Holley to testify "as to the test booklets and test results he reviewed, and give his personal observation of same." Over Buck and Robinson's objection, the hearing was reopened. Holley testified that he had examined the test answers cited by the Department and offered certain observations:

> A. They were all almost identical. I mean, the tests, the wording of the answers were the same. The same words were misspelled. On some of the, it has reference in here to, I note, it is so obvious that there were two pages in the back of the, on their blank pages where they were suppose to answer a problem or give a statement as to what it was. It was one question. They wrote one answer on one page and then they turned the page over and wrote the other answer on the other one. Now, the ones that didn't do that were erased and either the answer changed or it was then placed on the back.

> Q. What, if any, impression did you draw after you reviewed all 12 or 13 of the questions from the children's test booklets ... ?

> A. They had been coached or told the answers.

¶12. By letter dated July 22, 1996, the Mississippi Board of Education informed John Clark, School Board President, and Tommy Smith that the decision to lower the District's accreditation level to "accredited-1-probation" had been affirmed.

¶13. The Board did not alter its previous decision on nonrenewal. The teachers' appeal to the chancery court was unsuccessful.

¶14. The Court of Appeals reversed and essentially rendered the decision of the Board, remanding only for a consideration of damages. It found first that the non-renewal was based solely on the communications from the Department alerting the Board to the possibility that copying, coaching or interference with answers occurred. The Court of Appeals then assumed for the sake of argument that the Department's letters, combined with the knowledge of the teachers involved, were sufficient to constitute a demonstrable reason for non-renewal. The burden then fell to Buck and Robinson to prove affirmatively that the reasons given by the Board had no basis in fact. The Court of Appeals stated that Buck and Robinson introduced "affidavits" which denied the charges. The Court found that these affidavits:

> were sufficient, in themselves, to meet these teachers' threshold burden of demonstrating the untruth of the school board's stated reasons. Though the burden of proof did not then shift to the school board to prove by a preponderance of the evidence that Buck and Robinson did, in fact, improperly assist their students, these affidavits were sufficient to shift the burden of going forward to the school board to show that there was some factual basis for the allegations of wrongdoing relied upon to deny these teachers reemployment.

¶15. The Court of Appeals then considered whether the Board presented substantial evidence to counter the affidavits, specifically noting the Department's letters and Holley's testimony as to the interviews with children and his review of the actual tests. The Court of Appeals concluded that the Department's letters at best suggested the need for further investigation. It further found that Holley's testimony as to the children was hearsay, and, while admissible, could not provide the sole basis for the decision. Finally, the Court of Appeals found that Holley's testimony as to the test results had no probative value and amounted to a violation of due process and the right to a fair hearing.

## **DISCUSSION**

¶16. The scope of review of a chancery court's judgment in a case where a school board is a party is limited. Miss. Code Ann. § 37-9-113(3) (1996) states that the decision not to renew is unlawful when it is (a) not supported by any substantial evidence; or (b) arbitrary and capricious; or (c) in violation of some statutory or constitutional right of the employee. The Court of Appeals relied on ***Harris v. Canton Separate Pub. Sch. Bd. of Educ.,*** 655 So. 2d 898, 904 (Miss. 1995), which provided the following standard:

> Where a board declines to rehire a school employee, it must provide a demonstrable reason for its decision. Once the board has provided a reason, the employee must, to prevail, prove that such reason is without factual basis as the Court explained in ***Calhoun County Board of Education v. Hamblin***, 360 So. 2d 1236, 1240 (Miss. 1978), in which it reinstated a school board's decision not to renew a principal.

¶17. This Court more fully explained this standard in ***Hamblin***, 360 So. 2d at 1240:

> The burden of proof at the hearing is not on the superintendent or principal, as the case may be, as it would be in a tenure situation. ***Lamar County School Board v. Saul***, 359 So. 2d 350 (Miss. 1978). Once the Superintendent has given a demonstrable reason for non-reemployment (before the hearing), the burden at the hearing is upon the employee to prove affirmatively and conclusively that the reasons relied upon by the School Board have no basis in fact. In the present case, the Superintendent met this requirement of furnishing a demonstrable reason for the recommendation of non- reemployment (lack of communication with the faculty and community). At the hearing, witnesses for the Superintendent testified to a lack of communication, while witnesses for the principal testified to the contrary. Although the proof is inconclusive, it cannot be said that the reason was not demonstrable and not supported by fact.

¶18. The Court of Appeals stated that the Board based its non-renewal decision on nothing but allegations made in the Department's March 5 letter of possible copying of answers or coaching or interference with responses. However, the decision was not made until after the District had responded to the allegations and after the receipt of the Department's March 29 letter stating that:

> your district has failed to comply with testing regulations established to maintain the integrity and accuracy of data in the Mississippi Assessment System. Specifically, your district did not comply with the following policies in <u>Bulletin 171</u>, Twelfth Edition, 1995: Coaching students during testing or altering or interfering with their responses in any way is prohibited. (Appendix H, Number 7) Evidence that individual students have similar or identical patterns of responses on their tests.

(Appendix I, Letter B).

¶19. The "affidavits" which the Court of Appeals found to "affirmatively and conclusively" disprove the School District's allegations were unsworn statements by Buck and Robinson addressed to Peggy Rogers, coordinator of the testing program for Lowndes County, dated March 8, 1996. Buck's stated:

> The procedures for the test were followed. The questions were vague and confusing to the students. The directions were repeated to the students and in some instances we had to explain what the directions meant. All I can say, we did not give any answers to the students during the ITBS.

Robinson gave the following statement:

> Mrs. Buck and I attended staff development training prior to the test. During the staff development training we viewed a video that outlined the procedures for the test administration. Mrs. Buck and I followed the guidelines outlined in the training video during the test administration. Ms. Rogers, there were times during the testing when the students encountered difficulty in understanding the directions. When these difficulties occurred, the directions were explained to the students.

¶20. The chancery court found that the substantial evidence supporting the Board's decision not to renew the contracts consisted of the Department's March 29 letter which found noncompliance as to testing procedures; the Department's May 3 letter to the District's attorney informing the District that the test results in question were confidential, but providing the District a copy of the Testing Irregularities Alert triggered by the tests in question, which summarized the similar answers and means of answering; the Department's June 14 letter to Tommy Smith stating that the accreditation level had been dropped; and the Mississippi Board of Education's July 22 letter to John Clark and Tommy Smith, stating that the District's appeal had been rejected and the accreditation level would remain at "Level 1 Probation."

¶21. We find that the decision of the Court of Appeals is in conflict with this Court's decisions in *Harris* and *Hamblin*. The burden clearly rests with the employees/teachers to present affirmative evidence that the Board's decision was without factual basis. It is insufficient for the teachers to claim simply that the allegations against them are untrue. By analogy, this Court has held that a party must present "significant probative evidence," and not just general allegations or denials, to defeat a motion for summary judgment. *See Prescott v. Leaf River Forest Prods., Inc.,* 740 So. 2d 301, 309 (Miss. 1999). The burden was on Buck and Robinson to come forward with affirmative evidence that the allegations against them were not true, and they failed in that regard. Their statements were not sworn and contained only general denials of any testing improprieties.[1]

¶22. Leaving the onus on the teachers to present evidence of the falsity of the Board's "demonstrable reason" is in keeping with the legislative intent allowing for a hearing to "present matters relevant to the reasons given for the nonreemployment decision . . . ." Miss. Code Ann. § 37-9-109(b) (1996). The statute provides for a fair and impartial hearing to allow the teacher to prove that the Board's decision is not based on fact. The Legislature has not changed the at-will employment of public school teachers, but has provided teachers a hearing to afford them constitutional protections. Miss. Code Ann. § 37-9-101. The teachers in this case were provided that hearing, but they failed to meet their required burden.

¶23. The chancery court found that four letters from the Department and the Mississippi Board of Education to the District informing the District of noncompliance as to testing procedures, a reduction in the

District's accreditation level as a result, and the rejection of the District's appeal on the lowering of the accreditation level, amounted to substantial evidence supporting the Board's finding of non-renewal. We affirm this finding. Holley's hearsay testimony was superfluous. As to the letters making up the substantial evidence, we find that they are exceptions to the hearsay prohibition under the public records and reports exception of M.R.E. 803(8).

## CONCLUSION

¶24. The judgment of the Court of Appeals is reversed and rendered, and the judgment of the Lowndes County Chancery Court is reinstated.

¶25. **REVERSED AND RENDERED.**

> **PITTMAN, P.J., BANKS, SMITH, MILLS AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. PRATHER, C.J., AND SULLIVAN, P.J., NOT PARTICIPATING.**

1. Both Buck and Robinson signed their statements before a notary public. Each statement contains the following: "Signed before me on March 19, 1996. [Signature] Notary Public." However, neither "affidavit" states that Buck and Robinson had been sworn or that the matters contained in the "affidavit" were true and correct.