751 So.2d 1212 (1999)
Gillie Ann DOTY, Appellant,
v.
TUPELO PUBLIC SCHOOL DISTRICT, Appellee.
No. 1998-CC-01253-COA.
Court of Appeals of Mississippi.
November 16, 1999.
*1214 Gail D. Nicholson, Gulfport, Attorney for Appellant.
James Arden Barnett, Jr., Bo Russell, Tupelo, Attorneys for Appellee.
BEFORE KING, P.J., IRVING, AND LEE, JJ.
IRVING, J., for the Court:
¶ 1. Gillie Ann Doty has appealed the decision of the Chancery Court of Lee County affirming the Tupelo Public School Board's decision not to renew her employment contract for the 1996-1997 school year. Doty claims that the school board acted in an arbitrary and capricious manner and that it violated her procedural due process rights because it failed to give her a hearing within thirty days and because the decision by each board member was not based solely on the record. Additionally, Doty argues that the decision was not supported by substantial evidence. Finding that the chancellor did not err in refusing to overturn the school board's decision, we affirm the lower court's decision.

FACTS
¶ 2. Doty taught physical education to pre-kindergarten through fourth grade students for fifteen years in the Tupelo Public School District. Dale Warriner had been principal at Rankin Elementary for two school years at the time of Doty's non-renewal. On April 8, 1996, Doty was given notice that her contract for the 1996-97 calendar school year would not be renewed. Pursuant to her request for a hearing and statement of the reasons for the nonrenewal of her contract, she was sent a letter which provided the following
a. Pam Beard, mother of a third grade student. Ms. Beard's daughter came home crying on numerous occasions because of her treatment by Doty. Ms. Beard's daughter complained that Doty was always screaming and yelling at the students;
b. Doty screamed at Carol Fikes's daughter for insignificant matters, causing Ms. Fikes's daughter to cry. This happened throughout the year. Fikes observed Doty screaming, hollering and demeaning the students. As a result Ms. Fikes's daughter was afraid of Doty;
c. Loraine White reported to Warriner that her son was afraid of Doty because of her loud, inappropriate manner of communicating with students. He dreaded going to P.E. White observed Doty talking harshly to a student for getting out of line. On one occasion, because Doty would not let students go to the bathroom, her son wet his pants in class;
d. Deborah McPherson stated that her daughter is afraid of Doty. Doty told Ms. McPherson's daughter not to wear "those damn shoes to PE again." Her daughter came home from school with a bruised and swollen eye when she collided with another child in PE. Doty did not administer appropriate first aid. While voting, McPherson observed Doty screaming and hollering inappropriately at her students;
e. Candy Galloway reported to Warriner that she was upset because Doty embarrassed her daughter in front of other students regarding a makeup kit her daughter had taken to school. During the 1994-95 school year Doty would not let Ms. Galloway's daughter participate in activities *1215 because she could not tie her shoes. Her daughter was afraid of Doty because she yelled at the students;
f. Doty told an overweight student, that she could not walk 2 miles much less run 2 miles;
g. A member of the community, Mary Jane Livingston, while voting, observed Doty speaking harshly and inappropriately to her students;
h. Robin Purnell felt that the P.E. program under Doty was the least liked program at Rankin Elementary;
i. Susan Johnstone, school psychologist, observed Doty humiliate a child in front of the class because his zipper was open. Doty, in front of the other students, told him his zipper was open. His classmates laughed at him;
J. Samantha Cox, assistant teacher, observed Doty screaming at a first grader in front of other students during class change. Doty made statements like "So you're going to cry. Do you think that bothers me?" Doty's conduct was inappropriate and embarrassing to students and adults alike;
k. Doty conducted PE class outside in August, 1995, when the heat index was extremely high;
l. A student, Abby Bailey, hurt her knee during softball. Doty did not adequately examine Abby to determine the extent of her injury. Another teacher subsequently cleaned Abby's injured knee;
m. Doty told the daughter of Virginia Hunter to sit "Indian style," even though the girl was wearing a dress. When the student told her that she couldn't sit that way in a dress, Doty told the student in a harsh manner that she would sit "Indian style" because she "did not tell her to wear that dress";
n. Doty told her students a gory story from the newspaper about teenage boys killing dogs and digging up human heads; and lastly,
o. Doty had a practice of not letting students go to the bathroom during her class. As a result, students wet their pants.
¶ 3. The hearing was held on September 6, 1996, before a hearing officer appointed by the board to hear the case. The hearing officer recommended that Doty's contract not be renewed, and the board agreed.
ANALYSIS OF THE ISSUES PRESENTED
1. Lack of any substantial evidence and the arbitrariness and capriciousness of the nonrenewal decision
2. Violation of Doty's procedural due process rights

Standard of Review
¶ 4. Pursuant to Miss.Code Ann. § 37-9-113(3) (Rev.1996), the chancery court's scope of review of a school board's decision not to renew an employment contract is limited to three areas of inquiry:
(a) was the decision supported by any substantial evidence;
(b) was the decision arbitrary or capricious; or
(c) was the decision in violation of some statutory or constitutional right of the employee.
The review is limited to the record made before the school board or hearing officer. Id. We must apply the same standard of review. Harris v. Canton Separate Pub. Sch. Bd. of Educ., 655 So.2d 898, 901 (Miss.1995). In cases of nonrenewal, the school board is required only to demonstrate that a "demonstrable reason" exists for the decision not to renew. Calhoun County Bd. of Educ. v. Hamblin, 360 So.2d 1236, 1240 (Miss.1978). The burden of proof is on the employee to prove that *1216 the school board had no basis in fact for terminating the employee. Id. Our review of the record reveals that Doty failed to meet this burden.

First issue: Lack of any substantial evidence and the arbitrariness and capriciousness of the nonrenewal decision
¶ 5. Dale Warriner was the only witness to testify for the school district, and Doty, along with five other witnesses, testified on Doty's behalf. Warriner testified that prior to her decision to recommend the non-renewal of Doty's contract, she made several attempts to discuss with Doty the complaints made by the parents, as well as, to discuss the communication style Doty used with the students. Doty testified that she was never given the specific names of students, nor did Warriner suggest ways to improve Doty's communication style.
¶ 6. After the presentation of the evidence was concluded, Doty requested an opportunity to appear before the board prior to the final decision. Her request was honored, and during the meeting in which the final decision was made, each school board member was polled on whether he/she had read the record and based his/her decision solely on the record. All members answered in the affirmative. The board, as previously stated, voted to not renew Doty's contract.
¶ 7. Doty argues that no substantial evidence, other than hearsay, was offered in support of the claims of the nonrenewal decision and that the school board based its decision solely on hearsay testimony. Doty relies on Miss.Code Ann. § 37-9-111(5) (Rev.1996) which states that hearsay evidence, if admitted, shall not be the sole basis for the determination of facts by the board or hearing officer. In this regard, Doty is correct, for hearsay evidence alone, though admissible, is insufficient to support a nonrenewal decision, and a board's findings of facts must not be based solely on hearsay evidence. See Noxubee County Bd. of Educ. v. Givens, 481 So.2d 816 (Miss.1985).
¶ 8. We first note that it is not evident on the face of the letter, providing the reasons for the nonrenewal decision, whether the content thereof is based on Warriner's personal knowledge or information supplied to her by someone else. Warriner testified that the general reason for the nonrenewal decision was "the inappropriate manner, harsh tones of [Doty's] communicating with children, yelling, just a lot of ... ridicule, that sort of thing." She then went on to testify, pursuant to questions from the school board's attorney, about the specific reasons given Doty for the nonrenewal decision. A review of this testimony reveals that most of those reasons appear to be based on complaints made by parents to Warriner about Doty, and that Warriner had no firsthand knowledge of most of the incidents except as supplied by the parents. As stated, none of these parents were called as witnesses. In this regard, we point out that once the school board offers a demonstrable basis for its decision, the burden shifts to the nonrenewed teacher to prove that the reasons given are a pretext masking some illegal or unconstitutional motive on the part of the school district, or that there is no basis in fact for the decision. See Claiborne County Bd. of Educ. v. Martin, 500 So.2d 981, 985 (Miss.1986); Calhoun, 360 So.2d at 1240. Doty could have called any of the parents she desired to question, and under the authority of Miss.Code Ann. § 37-9-111(7) (Rev.1996), could have been assisted in this endeavor by having a subpoena issued for those parents.
¶ 9. Doty, however, is correct in her contention that a substantial amount of testimony, several letters and memoranda, which are indeed hearsay, were admitted into evidence. This evidence came in as Warriner explained each of the reasons given in the letter. However, Warriner's testimony was not purely hearsay. Warriner's testimony was a collage of the parents' and others' complaints of Doty, Warriner's *1217 investigation and notes of those complaints, along with Warriner's notes of her conversation with Doty concerning those specific complaints as well as other concerns personal to Warriner. For example, in addition to the above-quoted testimony, Warriner testified concerning occasions in which she observed Doty's teaching demeanor which Warriner found unacceptable. Warriner also gave testimony about her admonishment of Doty for Doty's use of harsh tones while communicating with the children. Warriner further testified to observing Doty on one occasion allowing students to stand too long in a line, instead of participating in a structured activity. Warriner gave further testimony about an occasion when she and a guest observed Doty wasting too much time disciplining a student for being out of a line. Warriner also testified to observing Doty conduct a physical education class outside in August, 1995, when the heat index was extremely high. We note that this particular incident is cited as one of the reasons in the letter.
¶ 10. A comparison of Warriner's testimony with the items set forth in the letter to Doty, providing the reasons for the nonrenewal decision, reveals that the board had before it more than just the hearsay contained in the letter. Doty even admitted that Warriner informed her about the manner in which Doty spoke to children. Further, Doty admitted to being blunt and a strict disciplinarian. Certainly, Doty's admissions are not hearsay even if they were admissions regarding hearsay matters raised with Warriner by parents or others. Under these circumstances, it cannot be said that the board rendered its decision solely on the basis of hearsay testimony.
¶ 11. Additionally, Doty did not attempt to offer any evidence to contradict the specific complaints. Instead, Doty offered testimony of her unsupported denials and evidence of how other students, parents and co-workers favored her teaching style. Doty argues that the school board did not produce any parents to testify against her. As mentioned above, the burden of proof is not on the administration but upon Doty to "prove affirmatively and conclusively that the reasons relied upon by the School Board have no basis in fact." Calhoun, 360 So.2d at 1240. Doty failed to meet her burden of proof.
¶ 12. Doty next contends that the school board's decision must be based on cause because the law requires that it not be arbitrary. Doty argues that the term "arbitrary" as defined by Blacks Law Dictionary means that a decision can be found to be "without fair, solid and substantial cause; that is without cause based upon the law." The Mississippi Supreme Court, however, stated in Tanner v. Hazlehurst Mun. Separate Sch. Dist., 427 So.2d 977, 979-80 (Miss.1983) that a careful reading of Miss.Code. Ann. § 37-9-101 (Rev.1996) will reflect that it is not the intent of the legislature to require that all decisions of nonreemployment be based upon cause. "In other words, so long as the nonreemployment decision is not based upon an improper reason, the school board does not have to justify its decision for nonreemployment." Tanner, 427 So.2d at 980; See Calhoun, 360 So.2d at 1240; Harris, 655 So.2d at 905. Therefore, this issue lacks merit.

Second issue: Violation of Doty's procedural due process rights
¶ 13. Doty argues that she had a procedural due process right to a timely hearing and a right to a decision by each board member based solely on the record. Miss. Code Ann. § 37-9-111(1) (Rev.1996) requires that:
The school board, upon request for a hearing from an employee ... shall set the time, place and date of such hearing and notify the employee in writing of same. The date shall be set not sooner than five (5) days nor later than thirty (30) days from the date of the request, unless otherwise agreed.
*1218 ¶ 14. On April 17, 1996, Doty requested a hearing as permitted by Miss.Code Ann. § 37-9-111 (Rev.1996), but waived the thirty day statutory hearing requirement. On May 31, 1996, the school board's attorney acknowledged the thirty day waiver and stated that the school board would contact her to arrange a date for the hearing. On June 21, 1996, Doty acknowledged the need for the waiver was due to scheduling problems, but requested a hearing date and a statement of reasons for the non-renewal. On July 26, 1996, Doty expressed concern that the hearing had not been set and demanded a hearing date. In response to Doty's July 26, 1996 letter, the school board responded on the same day via facsimile and set the hearing for September 6, 1996. A hearing officer was also named in the July 26 facsimile.
¶ 15. At the beginning of the hearing, Doty stipulated that the procedural problems had been cured, specifically that the notification of nonrenewal was prior to April 8 and that she received the reasons for nonrenewal five days prior to the trial. Doty also stipulated that she waived her right to a hearing within thirty days. We find that Doty waived the thirty day requirement. We therefore hold that Doty was afforded all the procedural process due her.
¶ 16. Doty next argues that she has a procedural due process right to have her case reviewed by each board member and that allowing the hearing officer to summarize the testimony and make recommendations, usurps the responsibility of the board to individually weigh the sworn testimony. There is no statutory provision which authorizes a hearing officer to make recommendations to the board nor does any preclude him from doing so; however, in as much as the board is required to make its independent determination based upon the transcript and not any recommendation from the hearing officer, we are of the opinion that in nonrenewal cases when the hearing officer is appointed, his role should be limited to simply conducting the hearing and not to making any recommendations. In the case subjudice, however, the hearing officer's recommendation amounts to harmless error if error at all. We reach this conclusion because as stated, each member of the board was questioned as to whether he/she had read the transcript and whether his/her decision was based solely thereon, and each responded in the affirmative. This issue lacks merit.
¶ 17. THE JUDGMENT OF THE LEE COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO GILLIE ANN DOTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.