935 So.2d 1034 (2005)
AMITE COUNTY SCHOOL DISTRICT and Amite County School Board, Appellants
v.
Charles W. FLOYD a/k/a Charlie Floyd, Appellee.
Amite County School District and Amite County School Board, Appellants/Cross-Appellees
v.
Charles W. Floyd a/k/a Charlie Floyd, Appellee/Cross-Appellant.
Nos. 2003-CC-02705-COA, 2003-CC-02703-COA.
Court of Appeals of Mississippi.
November 15, 2005.
Rehearing Denied April 18, 2006.
*1036 James A. Keith, Jackson, attorney for appellants.
Gregg L. Spyridon, Michael W. Rutledge, Biloxi, attorneys for appellee.
EN BANC.
*1035 BARNES, J., for the Court.
¶ 1. In this consolidated appeal, the Amite County School Board and the Amite County School District appeal the judgment of the Amite County Chancery Court overturning the board's decision to discharge Charles Floyd from his employment *1037 as principal of Amite County High School, and the chancellor's award of attorneys' fees to Floyd. Floyd argues on cross-appeal that the chancellor erred in denying his request for an injunction against the school board, and by denying his motion to amend his complaint. Finding that the board's decision to terminate Floyd was supported by substantial, credible evidence, we reverse and render the chancery court's ruling and reinstate the decision of the Amite County School Board. Additionally, finding that the chancellor abused his discretion in awarding Floyd $19,411 in attorneys' fees, we reverse and remand. We find no error on cross-appeal, and thus affirm.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. After becoming aware of a number of problems in the administration of Amite County High School, Amite County School District Superintendent Mary Russ began an investigation. When her requests for information were met with resistance from Principal Charles Floyd and his staff, Russ asked the Amite County School Board for authorization to suspend Floyd so that she could proceed with her inquiry. On October 10, 2002, the board voted to suspend Floyd pending the investigation; however, acting on erroneous legal advice, the board voted that Floyd be suspended without pay. During the following month, Russ completed her investigation and ultimately dismissed Floyd by letter dated November 15, 2002. The letter identified the following reasons for Floyd's termination: (1) improperly charging students a $75 fee for tobacco violations and suspending students until the fees were paid; (2) signing off on student records that contained numerous inaccuracies and white-outs; (3) removing a physical science course from the curriculum without authorization; (4) holding track and field events on school property for private groups without fully explaining the details of the events to the school board; (5) failing to fulfill the duties of a full-time principal by spending an inordinate amount of time on unrelated activities; and (6) failing to complete student schedules for the 2002-2003 school year in a timely manner.
¶ 3. Following his termination, Floyd requested a due process hearing before the school board. However, four days prior to the scheduled hearing, Floyd filed a petition in the Chancery Court of Amite County (former cause No. 2002-264, on appeal No. 2003-CC-02703-COA) seeking to enjoin the school board from proceeding with the hearing and asking to be reinstated to his position as principal. Specifically, Floyd's petition alleged that the board could not be fair and impartial in hearing his case, and that he had been denied due process under both the Mississippi and United States constitutions because the board had suspended him without pay. In January 2003, the chancery court refused to issue an injunction, stating in its opinion that the school board could provide Floyd a fair and impartial hearing. However, the court found that Floyd's due process rights had been violated by the suspension without pay. Though the chancellor denied Floyd's request for an injunction, the court awarded him attorneys' fees in the amount of $19,411. Floyd subsequently filed a motion to amend his cause of action to include a claim of damages arising from the due process violation, but the chancellor denied the motion. The school board timely appealed to this Court on the chancellor's award of attorneys' fees, and Floyd timely cross-appealed asserting that the chancellor erred in denying his motion to amend and in refusing his request for an injunction.
*1038 ¶ 4. After the chancery court issued its ruling, the board-appointed hearing officer conducted a hearing over four days in March and April of 2003 regarding Floyd's dismissal. Though a number of witnesses testified on his behalf, Floyd did not testify at the hearing. In June 2003, the hearing officer presented the school board with the hearing transcripts, exhibits, and a 122-page summary of the evidence adduced at the hearing. After reviewing these materials, the school board voted unanimously in July 2003 to uphold Floyd's termination and issued a written decision with specific findings of fact supporting the dismissal. Aggrieved, Floyd sought review of the decision in the Amite County Chancery Court (former cause No.2003-156, on appeal No. 2003-CC-02705-COA), as provided by section 37-9-113 of the Mississippi Code Annotated (Rev.2001). On October 21, 2003, the chancery court issued an opinion overturning the school board's decision and reinstating Floyd to his position as principal of Amite County High School. The school board and school district filed a timely appeal to this Court, and we consolidated the appeal, case No. 2003-CC-02705-COA, with the appeals in the injunction case, No. 2003-CC-02703-COA.

ISSUES AND ANALYSIS
I. WHETHER THE CHANCELLOR ERRED BY DECIDING THAT SUBSTANTIAL EVIDENCE DID NOT SUPPORT ONE OR MORE OF THE REASONS UNDERLYING THE BOARD'S DISMISSAL ACTION AND BY DECIDING THAT THE BOARD'S DECISION WAS ARBITRARY AND CAPRICIOUS.
II. WHETHER THE CHANCELLOR ERRED IN FAILING TO DEFER TO THE SCHOOL BOARD'S FINDINGS OF FACT BY IMPROPERLY RE-WEIGHING THE EVIDENCE, IMPROPERLY ASSESSING THE CREDIBILITY OF THE WITNESSES, AND IMPROPERLY CONSIDERING MATTERS NOT IN THE RECORD BEFORE THE BOARD.
¶ 5. Section 37-9-59 of the Mississippi Code Annotated (Rev.2001) provides that "For incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil or other good cause the superintendent of schools may dismiss or suspend any licensed employee in any school district." Employees so dismissed are entitled by law to a public hearing upon the charges. Id.; see also Miss.Code Ann. § 37-9-111 (Rev.2001) (setting forth hearing procedures). In such a hearing, the superintendent has the burden of proving by the preponderance of the evidence that there are adequate grounds for dismissal. Harris v. Canton Separate Pub. Sch. Bd. of Educ., 655 So.2d 898, 902 (Miss.1995) Section 37-9-113 of the Mississippi Code allows an employee aggrieved by a school board's decision to seek judicial review in the chancery court of the judicial district in which the school district is located. However, this statute severely limits the chancery court's scope of review in such an instance. It provides, in relevant part:
The scope of review of the chancery court in such cases shall be limited to a review of the record made before the school board or hearing officer to determine if the action of the school board is unlawful for the reason that it was: (a) Not supported by any substantial evidence; (b) Arbitrary or capricious; or (c) In violation of some statutory or constitutional right of the employee.
Miss.Code Ann. § 37-9-113(3) (Rev.2001). On appeal, this Court applies the same standard of review. Harris, 655 So.2d at 901.
*1039 ¶ 6. As an initial matter, we find that the chancellor improperly looked beyond the record before the school board in making his ruling. Section 37-9-113(3) limits the chancery court to a "review of the record made before the school board or hearing officer" in determining whether the board's decision was arbitrary or capricious. In this case, however, the chancellor's decision was driven in part by matters outside the record. In his opinion, the chancellor referred to Floyd's prior injunction action, stating, "It can't escape notice that the Board itself suspended Coach Floyd without pay without any basis and contrary to statute.... This prior failure by the Board and Mary Russ can't be completely ignored in this Court's decision." The chancellor attempted to justify his reliance on matters outside the record by suggesting that James Keith, the school board's attorney, incorporated the record of the injunction proceedings into the record before the school board. At Floyd's termination hearing, Keith said, "Okay. And we won't go into all those details in this hearing. I think that's already a matter of record, and if we need to refer back to it we certainly can do that." However, as the need never arose to refer to the record of the injunction proceedings, the attorneys never actually made an effort to incorporate the injunction record into the record before the school board. Thus, the chancellor acted against the mandate of section 37-9-113(3), and was in error in looking beyond the record before the school board.
¶ 7. Referring to the strict standard of review set forth in section 37-9-113, the Mississippi Supreme Court has held that if there is substantial, credible evidence supporting a school board's findings of fact, a reviewing court may not disturb those findings on appeal. Harris, 655 So.2d at 902 (citing Noxubee County Bd. of Educ. v. Givens, 481 So.2d 816, 819 (Miss.1985)). "Substantial evidence" has been defined as "evidence which ... afford[s] a substantial basis of fact from which the fact in issue can be reasonably inferred. It is something more than a `mere scintilla' of evidence, and does not rise to the level of `a preponderance of the evidence.'" Id. (internal citations omitted). In contrast, "An act is arbitrary when it is not done according to reason or judgment, but depending on the will alone. `Capricious' [is] defined as any act done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles." Burks v. Amite County Sch. Dist., 708 So.2d 1366, 1370 (¶ 14) (Miss.1998) (internal citations omitted). Logic dictates that a board decision based on substantial evidence is, by definition, not arbitrary or capricious. In reviewing a school board's termination decision, the court's task is to determine whether substantial evidence exists supporting that decision; if it does, the court has no authority to reverse. Merchant v. Bd. of Trustees, 492 So.2d 959, 962 (Miss. 1986).
¶ 8. The chancellor below found that the school board had failed to demonstrate by substantial, credible evidence that Floyd's termination was justified. In so doing, we find that the chancellor improperly substituted his own judgment for that of the board. Rather than limiting his inquiry to the determination of whether substantial evidence existed supporting the board's decision, the chancellor exceeded his authority by re-weighing the evidence and the credibility of the hearing witnesses, and by looking beyond the record before the school board. After reviewing the record, it is clear to this Court that the board's decision to discharge Floyd was supported by substantial evidence. Accordingly, we must reverse and render the *1040 ruling of the chancery court, and reinstate the decision of the Amite County School Board discharging Floyd from his employment as principal of Amite County High School. We will now address the reasons enumerated by the school board for Floyd's termination.

a. Tobacco violations
¶ 9. At the hearing, Amite County School District Superintendent Mary Russ testified that the issue of tobacco violations came to her attention in the fall of 2002, when parents began calling her office complaining about their children being fined $75 for smoking-related offenses. During her investigation, Russ discovered several receipts for fines levied upon students who had been caught smoking, and uncovered disciplinary reports revealing that some students had not been allowed to return to school until the fines were paid.[1] Russ testified that when she questioned Floyd about the fines, he stated that the former superintendent, Bobby Whittington, had approved them. However, while the school district's policy manual ("handbook") outlined a range of different disciplinary measures to be imposed upon a student in possession of tobacco, a fine was not listed as an authorized punishment. In fact, the only fines approved in the handbook were those for overdue books. Russ testified that she checked with other principals in the school district, and that none of the other administrators understood there to be a policy allowing such fines. Russ stated that once she requested that Floyd stop this practice, she received no more complaints.
¶ 10. Furthermore, Russ testified that she had been unable to obtain an accounting of the tobacco fines collected by the school. Russ stated that she questioned the school's business manager, who claimed that he had never received any of the fines and thus had no record of the money being deposited in the school's accounts. Further, school disciplinarian Charles Jackson testified at the hearing that he never received the money, and that instead the fines were supposed to have been collected by the school secretary. Floyd offered no evidence showing what happened to this money.
¶ 11. The chancellor held that on this ground, the board had not presented substantial, credible evidence supporting Floyd's dismissal. The chancellor stated that "The fact is that multiple school personnel testified that [former Superintendent Bobby] Whittington initiated the [tobacco] policy. It is also undisputed that Coach Floyd immediately abandoned the fine policy once he was so ordered by [Superintendent] Russ." The chancellor further stated that there was no specific evidence showing that the fine monies had been mishandled in any way.
¶ 12. The chancellor's opinion mirrors Floyd's argument in that it suggests that the tobacco fines were part of established school policy. However, it is clear that they were not. Authorization for these fines appears nowhere in the school district's handbook, and as a result, the imposition of the fines was a clear violation of district policy. Published school district policy authorized Floyd to administer one of a number of punishments, including in-and out-of-school suspension, for tobacco violations; it did not give him the power to charge a fine. Furthermore, exacerbating the problem, Floyd could not account for the monies collected by the school. While it is true that there was no evidence adduced at the hearing suggesting a criminal *1041 mishandling of the funds, Floyd could not provide any evidence explaining where the collected fines went.
¶ 13. The present case is strikingly similar to Merchant v. Board of Trustees, 492 So.2d 959, 962 (Miss.1986), in which a high school football coach was discharged for the unauthorized sale of t-shirts and soft drinks, and for his failure to account for the monies collected from the sales. The Mississippi Supreme Court held in that case that these violations of school district policy justified Merchant's discharge. In the present case, the school board put forth substantial, credible evidence showing that Floyd violated published school district policy in levying the tobacco fines, and that he could not account for the monies collected pursuant to the fines. The chancellor's ruling must be reversed.

b. Inaccuracies in student records
¶ 14. The school board's written decision stated that there was substantial evidence that Floyd improperly signed a number of students' permanent records, thus certifying students for graduation, when the records should not have been certified in many instances. Additionally, other errors appeared on student records that showed the records were not being kept in accordance with Mississippi State Department of Education (SDE) regulations.
¶ 15. Mary Ann Moore, a long-time SDE employee whose duties included reviewing student records and developing training programs regarding proper maintenance of student records, testified at Floyd's hearing that a student's permanent record contains a "graduation facts" box that must be signed by the principal of a school before that student can graduate. This box summarizes certain information such as a student's grade-point average, class rank, and the number of high school units completed. Moore stated that the principal's signature in this box certifies that the information contained in a student's record is true and accurate. She testified that while a principal typically delegates record-keeping to a staff member, the principal cannot delegate the responsibility for ensuring that the information contained in the record is true and correct.
¶ 16. The school board introduced forty-five transcripts of Amite County High School students; none of the transcripts had been kept in accordance with SDE regulations, according to Moore. The reasons for noncompliance recur and vary from record to record. A sampling of the infirmities in the student records follows:
Many records contained unexplained handwritten grade changes,[2] and many reflected that students had been given either too little or too much credit for the courses taken;
Changes were made to the record of Student 4[3] through the use of correction fluid, along with various other unexplained grade changes;[4]

*1042 Student 7's "graduation facts" box contained no class rank and no summary of high school units;
Student 9's record reflected that he had taken only two units of science, when three were required in order to graduate.
¶ 17. Moore testified that it is a serious omission for a student to graduate without taking a required course. However, the student records submitted by the school board made it clear that Floyd certified for graduation no fewer than eleven students, who, because they had not taken certain required classes, should not have been eligible to graduate. Moore admitted that "to be fair," officials could investigate the records and the circumstances to determine whether a student took the required courses for graduation, but that this information was not apparent on the face of the records. Moore stated that in reviewing student records she often finds errors, but "not a pervasive pattern this massive with this type of error," especially in regard to students failing to meet graduation requirements. Lastly, Superintendent Mary Russ testified that Deputy State Superintendent John Jordan had referred to the Amite County High School record-keeping as the worst he had seen in the State of Mississippi.[5]
¶ 18. In his ruling, the chancellor acknowledged that the evidence "clearly establishe[d] that there have been some problems with the details and methods of handling the cumulative records of students" during Floyd's tenure. However, he found that the board's decision to terminate Floyd on this ground was arbitrary and capricious because it was unsupported by substantial, credible evidence. The chancellor stated that the evidence was insufficient to show that Floyd "did something wrong," especially since "it was clear that the entire District has very lenient or lax policies regarding the maintaining of cumulative student records." However, testimony produced at the hearing showed that Floyd essentially "rubber-stamped" students' records, certifying them for graduation without taking the time to verify the accuracy or the completeness of the records. The school board did not find that Floyd acted improperly by "doing something wrong" such as falsifying records. Instead, it found that Floyd had neglected his duty as principal by certifying students to graduate when they had not met the requirements for graduation, and found that Floyd had made no efforts to correct these problems.
¶ 19. It is apparent from the chancellor's opinion that he exceeded his authority by re-weighing the evidence and the credibility of the witnesses. As stated above, if there is substantial, credible evidence supporting a school board's findings of fact, a reviewing court may not disturb those findings on appeal. Harris, 655 So.2d at 901. A reviewing court's inquiry is limited to the determination of whether substantial evidence supports the school board's decision. Where there is conflicting testimony presented to the school board at a termination hearing, the school board alone, not the reviewing court, is authorized to determine the credibility of the evidence and witnesses before it. Id. at 902. The reviewing court is by no means entitled to decide the case as if it had been the trier of fact of the issues in dispute. Byrd v. Greene County Sch. Dist., 633 So.2d 1018, 1022 (Miss.1994).
¶ 20. In the present case, the chancellor improperly re-weighed the evidence and the credibility of the witnesses as if he had *1043 been the trier of fact. This is simply not the chancellor's province in such a case. In finding that no substantial, credible evidence supported the board's termination of Floyd, the chancellor opined that "the entire process initiated by Mary Russ is without credibility." He chancellor determined that Russ's "`story' makes no sense whatsoever," and that "the incredible story" that gave rise to Floyd's discharge "taint[ed]" the school board's case. Furthermore, the court stated that "The Board's decision does not reflect that the Board took into consideration the knowledge and credibility of the witnesses who testified." The chancellor proceeded to substitute his own judgment for that of the board. As it was the board's place to make determinations as to the credibility of witnesses and the weight of the evidence before it, the chancellor overreached his authority in deciding this case.
¶ 21. As the reviewing court, our task is merely to determine whether substantial, credible evidence supported the school board's decision. A wealth of evidence was offered by the school board showing the deplorable condition of the records at the Amite County High School; the board was clearly within its rights to discharge a principal under whose watch these conditions flourished. Accordingly, we are compelled to reverse the chancellor's ruling.

c. Failure to complete student schedules in a timely manner
¶ 22. In January 2002, Floyd hired Ruth Lee Griffin as the guidance counselor for Amite County High School. In her new position, one of the key tasks with which Griffin was charged was the development of master schedules for the high school. However, Griffin told Floyd that as she had formerly been a special education teacher, she had no experience or training with respect to creating master schedules. Griffin testified that the master schedule for the 2002-03 year was supposed to be completed by the spring of 2002; however, Floyd told her to wait. As a result, Griffin did not begin work on the 2002-03 master schedule until June of 2002. Superintendent Mary Russ testified that Floyd repeatedly assured her that the schedule would be completed by the beginning of the 2002-03 school year, and that he would help Griffin prepare the schedule. Despite Floyd's guarantee, he provided only minimal assistance to Griffin, and the schedule was not completed at the beginning of the school year. Jerry Padgett, a science teacher at Amite County High School, testified that the beginning of the 2002-03 school year was "chaotic," and that there were "numerous errors, delays and changes of schedules" that lasted six to eight weeks into the new school year. Again, Floyd offered no testimony regarding his failure to ensure the timely completion of the 2002-03 master schedule.
¶ 23. In finding that the school board had put forth no substantial evidence supporting Floyd's discharge on this ground, the chancellor referred to Padgett's testimony in which he claimed that for the eight years he had been in the school district there had never been a schedule completed before August. While this testimony illustrates that scheduling problems were common at Amite County High School, it does not excuse Floyd's failure in the present case. In Holliday v. West Point Mun. Separate Sch. Dist., 401 So.2d 1296 (Miss.1981), the Mississippi Supreme Court held that a principal's inept handling of a school schedule constituted incompetence under section 37-9-59 justifying the principal's discharge. Similarly, we find that substantial, credible evidence showed that Floyd failed to ensure an orderly beginning to the school year by failing to have the master schedule completed. *1044 We must reverse the chancellor's ruling.

d. Other grounds for termination
¶ 24. It is clear from the above discussion that the school board was justified in discharging Floyd for a number of reasons. The remaining grounds put forth by the school board present much closer questions, however. As we have already found sufficient grounds supporting Floyd's termination, we need not rule further. Regardless, we will discuss the remaining issues briefly.
¶ 25. The school board claims as one of its grounds for Floyd's termination that Floyd improperly removed a physical science class from the school's curriculum without authorization. The school board offered testimony that Floyd had replaced a physical science class with an upper-level chemistry course upon the request of Jerry Padgett, after approximately twenty students had registered for the physical science class. According to Superintendent Mary Russ, only the SDE has the authority to remove courses from a school's curriculum if students have registered for the course. However, the board offered no evidence to corroborate Russ's assertion that Floyd's actions were improper. The chancellor held that in the absence of evidence that Floyd's actions actually violated SDE or school district policy, this ground was insufficient to justify Floyd's termination. We agree with the chancellor on this point, and had this been the only ground upon which the school board's decision relied, we would affirm the chancellor's ruling.
¶ 26. The remaining grounds set forth by the school board as justifying Floyd's discharge are (1) that Floyd held track and field events on school property for private groups without fully explaining to the school board the details of those events, and (2) Floyd's failure to fulfill his duties as full-time principal by spending an inordinate amount of time on activities unrelated to his contractual responsibilities. At a school board meeting on May 9, 2002, Superintendent Russ granted Floyd permission to use Amite County High School's track to host a private track meet during the summer of 2002. However, Russ testified that Floyd did not inform her of the extent to which he would be spending time preparing for the event. Russ testified that when she called the high school that summer to reach Floyd, she was told that Floyd was unavailable because he was busy performing tasks related to the track meet. Russ testified that because of the inordinate amount of time spent preparing for the track event, Floyd failed to perform his duties as a full-time principal.
¶ 27. Other testimony adduced at the hearing suggested, however, that Floyd had been attending to his duties as full-time principal. Charles Jackson testified that Floyd was accessible when he or others needed him, and that he returned calls and was responsive to the needs of the faculty and administration. Furthermore, Jackson testified that he had never known Floyd to sacrifice his duties as principal for any track obligations. Additionally, track coach Kathy Banks testified that Floyd had missed an Amite County High School track meet that summer; he stated that he would not leave the campus because being principal was his primary duty.
¶ 28. Again, whether or not the school board put forth substantial evidence on these grounds is a close question. Again, had these been the only reasons upon which the school board relied in discharging Floyd, we would affirm the chancellor's ruling.

*1045 e. Conclusion

¶ 29. It is settled law that where the record supports one valid reason to discharge a licensed school district employee, the board's decision will not be disturbed. Spradlin v. Bd. of Trustees, 515 So.2d 893, 899 (Miss.1987). The chancellor found that none of the grounds for Floyd's termination was supported by substantial, credible evidence; however, it is clear from our review of the record that three of the board's reasons were supported by substantial evidence. Accordingly, we must reverse the chancellor's ruling and reinstate the decision of the school board discharging Floyd from his employment as principal of Amite County High School.

III. WHETHER THE CHANCELLOR ERRED IN DENYING INJUNCTIVE RELIEF TO FLOYD ON THE GROUND THAT THE BOARD WAS BIASED.
¶ 30. On December 16, 2002, Floyd petitioned the Amite County chancery court to enjoin the school board from proceeding with his dismissal hearing, alleging that the board was incapable of giving him a fair and impartial hearing. In a letter opinion dated January 23, 2003, the chancellor found that Floyd had failed to demonstrate that the board was biased against him. Floyd contends that the chancellor erred in his finding.
¶ 31. In analyzing claims of bias by employees appealing terminations, this state recognizes a presumption of honesty and integrity on the part of school board members serving as adjudicators in dismissal hearings. Harris, 655 So.2d at 903. In order to rebut this presumption, the dismissed employee must show "that the board members had a personal or financial stake in the decision, or that there was some personal animosity toward him." Id. Furthermore, a showing that the board was involved in the events preceding the employee's termination is insufficient to rebut the presumption of honesty and integrity. Byrd, 633 So.2d at 1022.
¶ 32. This Court will not disturb a chancellor's findings of fact unless we find that the chancellor abused his discretion, was manifestly wrong, or made a finding which was clearly erroneous. Bank of Miss. v. Hollingsworth, 609 So.2d 422, 424 (Miss.1992). In the present case, the board members' testimony makes it clear that they had no personal or financial stake in the decision, and that they had no personal animosity toward Floyd. In finding that the board members were not so biased as to deny Floyd a fair and impartial hearing, the chancellor did not abuse his discretion. We affirm the chancellor's denial of Floyd's request for injunctive relief.

IV. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION IN AWARDING FLOYD ATTORNEYS' FEES WHEN HE DID NOT OBTAIN THE SUBSTANTIVE RELIEF SOUGHT IN HIS INJUNCTION CASE.
¶ 33. The Amite County School Board contends that the chancellor abused his discretion in awarding Floyd a total of $19,411 in attorneys' fees. In his opinion denying Floyd's request for a permanent injunction against the school board, the chancellor recognized that the school board had violated Floyd's due process rights by suspending him without pay and awarded Floyd attorneys' fees pursuant to 42 U.S.C. § 1988. The school board contends that the amount was unreasonable in light of the fact that Floyd obtained none of the equitable relief he sought in his injunction case.
¶ 34. This Court recognizes that the award of attorneys' fees is a matter left to the sound discretion of the trial *1046 judge. Cruse v. Nunley, 699 So.2d 941, 944 (¶ 11) (Miss.1997). Accordingly, we will reverse such an award only upon finding an abuse of discretion, such as a misapplication of the law, by the trial judge. Id. The most critical factor in determining the reasonableness of an award of attorneys' fees is "the degree of success obtained." Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).
¶ 35. In his petition seeking to enjoin the school board from conducting a hearing in his case, Floyd additionally sought the following relief:
(1) Reinstatement to his position as principal of Amite County High School, with back pay retroactive to October 10, 2002;
(2) A permanent injunction prohibiting the school board from suspending or terminating him on the same or similar grounds in the future;
(3) A declaration that he was entitled to written notice of the specific reasons for his termination, a list of witnesses and a copy of the documentary evidence substantiating the reasons for his termination; and
(4) Reasonable costs and attorneys' fees incurred as a result of the board's failure to provide him with a fair and impartial hearing.
¶ 36. As discussed above, the chancery court properly denied Floyd's request to enjoin the school board from proceeding with the dismissal hearing. Additionally, the chancellor refused to reinstate Floyd to his position as principal, or to permanently enjoin the school board from proceeding against him in the future. Furthermore, the chancery court denied Floyd's request that the school board be required to provide him with documentary evidence supporting the reasons for his dismissal. The chancellor reasoned that, as the case involved a dismissal rather than a non-renewal, the school board was not required to provide Floyd with these documents.[6] Even though Floyd failed to obtain any of his requested relief, the chancellor nonetheless awarded him attorneys' fees in the sum of $19,411.
¶ 37. Considering the fact that Floyd obtained none of the relief sought in his injunction case, we find that the chancellor's fee award was highly disproportionate to Floyd's "degree of success." In his opinion, however, the chancellor properly recognized that the school board's suspension of Floyd without pay compelled Floyd to employ an attorney and to seek reinstatement of his pay pending his ultimate dismissal. While the school board, by letter dated November 15, 2002, recognized its mistake in imposing the suspension without pay and reinstated Floyd's pay up to the date of the dismissal hearing, the record is unclear as to whether Floyd actually received his back pay prior to commencing this action. Therefore, we reverse and remand to the chancellor for a determination of reasonable attorneys' fees, taking into consideration the degree of success obtained by Floyd in the injunction action and limiting the award of fees to those legal services rendered from the date Floyd was suspended without pay until the *1047 date upon which Floyd's pay was reinstated.

V. WHETHER THE CHANCELLOR ERRED BY REFUSING TO ALLOW FLOYD TO AMEND HIS PETITION FOR A PRELIMINARY INJUNCTION TO INCLUDE A CLAIM FOR DAMAGES.
¶ 38. On March 17, 2003, nearly two months after the chancellor issued his decision on Floyd's petition for injunctive relief, Floyd moved to amend his petition to include a claim for damages. In a letter opinion dated August 20, 2003, the chancellor denied Floyd's motion, ruling that the matter had been fully presented, and that the court had no authority to allow Floyd to "retry his case." Floyd contends that the chancellor abused his discretion in denying his motion to amend.
¶ 39. A trial court's denial of a motion to amend a complaint is subject to an abuse of discretion standard; thus, unless we are convinced that the trial court abused its discretion, we have no authority to reverse. Harris v. Miss. Valley State Univ., 873 So.2d 970, 990 (¶ 64) (Miss. 2004). This Court will affirm the trial court's denial of a motion to amend where it appears that the requesting party has not exercised due diligence in filing the application to amend. See Pratt v. City of Greenville, 804 So.2d 972, 976 (¶ 12) (Miss. 2001). In Natural Mother v. Paternal Aunt, 583 So.2d 614, 617 (Miss.1991), the Mississippi Supreme Court held that it was not an abuse of discretion to deny leave to amend where the plaintiff requested amendment two days prior to an adoption trial. In the present case, the motion to amend was not filed until well after the chancellor had passed judgment in the case. Finding that Floyd did not exercise due diligence in seeking amendment of his petition, we affirm the chancellor's denial of Floyd's motion to amend.
¶ 40. IN CAUSE NO.2003-CC-02705-COA, THE JUDGMENT OF THE CHANCERY COURT OF AMITE COUNTY OVERTURNING THE SCHOOL BOARD'S DISCHARGE OF CHARLES FLOYD IS REVERSED AND RENDERED, AND THE DECISION OF THE AMITE COUNTY SCHOOL BOARD IS REINSTATED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
¶ 41. IN CAUSE NO.2003-CC-02703-COA, THE JUDGMENT OF THE CHANCERY COURT OF AMITE COUNTY AWARDING ATTORNEYS' FEES IS REVERSED AND REMANDED. ON CROSS-APPEAL, THE DENIAL OF CHARLES FLOYD'S REQUEST FOR INJUNCTIVE RELIEF AND THE DENIAL OF FLOYD'S MOTION TO AMEND ARE AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY TO THE APPELLANT AND THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.
NOTES
[1] Evidence was produced at the hearing suggesting that some of these students were allowed to "work off" the fines during physical education class in order to avoid suspension.
[2] Moore testified that the proper procedure for changing a grade on such a record would be to cross out the incorrect information, write the new information, and initial the change. Moore further stated that the SDE strongly encouraged the use of a narrative explanation for the change.
[3] In order to protect the identity of the students, we will refer to students by number rather than by name.
[4] Moore testified that SDE regulations strictly prohibit the use of correction fluid on student records because it calls into question the accuracy and integrity of the data. Also troubling was the revelation that the changes to Student 4's record had been made retroactively, after the student graduated from high school.
[5] Corroborating this testimony was a letter dated October 25, 2002, in which Jordan informed Russ that he had requested an audit of the Amite County school system.
[6] Section 37-9-109(a) of the Mississippi Code Annotated (Rev.2001), regarding non-renewal of employee contracts, requires a school board to supply the aggrieved employee with "[w]ritten notice of the specific reasons for nonreemployment, together with a summary of the factual basis therefor, a list of witnesses and a copy of documentary evidence substantiating the reasons intended to be presented at the hearing." Section 37-9-59, which deals with employee dismissal, does not require the school board to provide such documentation to a dismissed employee.