ON WRIT OF CERTIORARI
CHANDLER, Justice,
for the Court:
¶ 1. Laura Shontelle Barnes was employed as an elementary school teacher with the Taylorsville Elementary School in the Smith County School District (District) for eleven years before she was terminated on May 12, 2009. Barnes was terminated for refusing to take a drug test, which was a violation of the District’s drug and alcohol policy. On July 17, 2009, the Smith County School Board (Board) held a hearing in which the Board heard evidence from Barnes and the District on the events surrounding May 6 and May 7, 2009. The Board affirmed the District’s Superintendent of Education’s decision to terminate Barnes’s employment. Aggrieved, Barnes appealed the Board’s decision to the Smith County Chancery Court. On March 10, 2010, the chancery court reversed the Board’s decision and reinstated Barnes’s employment, finding that the Board’s decision was arbitrary or capricious and was not supported by substantial evidence.
*65 ¶ 2. On April 13, 2010, the Board filed a notice of appeal with the Court of Appeals. In a six-four decision, the Court of Appeals reversed and rendered the chancery court’s holding, finding that the Board’s decision to affirm the superintendent’s termination of Barnes based on her refusal to submit to a drug test was not arbitrary or capricious. Barnes filed a motion for rehearing, which was denied on January 10, 2012. On January 19, 2012, Barnes petitioned to this Court, stating that the Court of Appeals failed to properly consider all relevant evidence that would have precluded termination of Barnes. Finding no error, we affirm.

FACTS

¶ 3. The following facts are largely derived from the Court of Appeals’ opinion. Barnes was a certified employee teaching first grade at Taylorsville Elementary in the Smith County School District. On May 7, 2009, Yvonne Dees, the elementary school principal, received reports that, on May 6, 2009, Barnes had been lying on the classroom floor with her eyes closed. According to testimony presented at the hearing, the children were still in the classroom. Five or six of the students informed other teachers that Barnes “fell out” and that she needed help. The teachers approached Barnes, who was still lying on the floor, and she informed them that she was in severe pain due to an ovarian cyst. The other teachers assisted her by watching the children, and she eventually left work at noon that day. At the hearing, Barnes stated that her pain was from an ovarian cyst. She also stated that, when returning home that day, she took medication prescribed to her for tooth pain.
¶ 4. After hearing about Barnes’s behavior from the teachers, Dees reported this information to Jeff Duvall, Taylorsville Attendance Center principal. Duvall then called Priscilla Magee, the District’s assistant superintendent, to determine the procedure for addressing the incident. Based on Duvall’s call to Assistant Superintendent Magee, the decision was made to request that Barnes submit to a drug test pursuant to the District’s drug and alcohol policy.
¶ 5. On May 7, 2009, Barnes returned to work and was summoned to Dees’s office to discuss her behavior from the day before. Dees, Duvall, and the Taylorsville assistant high school principal were all present at the meeting. Barnes did not deny any of the reports given to Dees. Dees informed Barnes that she needed to accompany them to a facility in Magee, Mississippi, to have a drug test performed. Barnes, although visibly upset, initially agreed to take the test. Barnes, Dees, and the assistant high school principal proceeded to the facility located in Magee. At the hearing, Dees testified that, shortly after they began driving to the facility, Barnes stated that she was humiliated and wanted to resign. They pulled the car over and called Duvall, who informed Dees that she should draft a letter of resignation for Barnes to sign. Before actually signing the letter, Barnes changed her mind again and agreed to take the drug test. They resumed traveling to the testing facility. Barnes then received a phone call from her attorney, who advised her to refuse the drug test. At 10:38 a.m., Barnes wrote and signed the following statement: “I refuse to take a drug test 5-7-09.” Barnes testified that Duvall told her that if she did not take the drug test, she would be suspended for one day. Barnes left the school that morning. Barnes went home and told her father what had happened, and he advised her to go back and take the drug test. Later that afternoon, Barnes returned to the school and stated that she would like to *66 take the test. Dees informed her that it was too late to take the test since she had already refused the test earlier. After calling Magee, the assistant superintendent, Barnes went to a facility in Bay Springs, Mississippi, and took a drug test. Although the results of the drug test were not presented by Barnes to the Board, Barnes testified that she tested positive for opiates and was on Xanax and Ambien. She claimed that she had prescriptions for all of the controlled substances she was taking.
¶6. In a letter dated May 12, 2009, Smith County Superintendent of Education Jimmy Hancock notified Barnes that her employment was terminated because of her refusal “to submit to a drug test, neglect of duty, and insubordination.” The letter also informed her that she was entitled to a hearing before the Board. The Board held the hearing on July 17, 2009. Dees, Duvall, Hancock, and Barnes all testified as to the events surrounding Barnes’s termination. The District presented into evidence written statements from six teachers who witnessed the incident on May 6, 2009. In her statement, Therese Pittman described the incident as follows:
I went to Mrs. Barnes[s’] door to get the students for an activity. The lights were out in the room and the students were running all around the room. A little girl came up to me and said “our teacher has fell out.” I turned and saw Ms. Rhodes coming toward me. She said Mrs. Barnes is hurting so she is lying down. I walked into the room and over to where she was lying on the floor. I looked down at her and her eyes were closed, I looked to make sure she was breathing. I turned and said loudly, to see if Mrs. Barnes would respond, [”]Okay girls line up.[”] I left the room with the girls and Mrs. Barnes never got up.
Tracey Rhodes’s description of the events, also submitted through a written statement, was similar to Pittman’s statement. Rhodes stated that when she entered the room, she saw Barnes lying on a rug. Janice Dozier, another teacher at the school, stated that she saw Barnes walking very slowly down the hall on the morning of May 6, 2009. When Dozier asked what was wrong, Barnes explained that her ovaries were hurting. Dozier further explained that, after lunch, one of Barnes’s students came into her room and said that Barnes needed her. When she arrived in Barnes’s room, she saw Barnes “lying on the carpet crying with her side hurting.” In the statement submitted by fellow teacher Melissa Jackson, she said Barnes was “able to carry on a conversation the entire time.”
¶ 7. At the hearing, Barnes said that her test results revealed that she had tested positive for opiates, for which she had prescriptions. However, Barnes did not present the Board with a copy of any prescriptions for her medications nor any statements from her treating physicians who had prescribed the medications she took. Also, she did not present any corroborating medical documentation or testimony supporting her claim that she was in severe pain from ovarian cysts.
¶ 8. After hearing all the evidence from the District and Barnes, the Board unanimously affirmed the District’s decision to terminate Barnes’s employment. The Board found that her dismissal was a proper employment decision that was supported by substantial evidence, was not arbitrary or capricious, and did not violate Barnes’s constitutional or statutory rights.
¶ 9. Barnes then appealed the Board’s decision to the chancery court. On March 10, 2010, the chancellor reinstated Barnes’s employment, finding that the *67 Board’s decision was arbitrary or capricious because the Board strictly held Barnes to the drug and alcohol policy but failed to hold itself to the same standard. The chancellor stated that the record did not show, as required by the District’s drug and alcohol policy, that the superintendent was the one who made the decision as to whether there was reasonable suspicion sufficient to request Barnes take a drug test or that he had appointed someone to act on his behalf. However, Barnes made no claim at the hearing before the Board that the assistant superintendent was without authority to act in the superintendent’s absence when giving Duvall permission to request that Barnes take a drug test.
¶ 10. The District appealed to the Court of Appeals concerning the following issue: whether the chancery court erred in reversing the Board’s decision because the Board’s decision was supported by substantial evidence; was not arbitrary or capricious; nor was it in violation of some statutory or constitutional right of Barnes. The Court of Appeals reversed and rendered the chancery court’s holding, reinstating the decision of the Board. On January 19, 2012, Barnes petitioned to this Court, arguing that the Court of Appeals failed to consider that there was no substantial evidence to support the school’s decision to terminate her. She also argues that the Court of Appeals failed to consider the totality of circumstances surrounding her refusal to take the drug test.

STANDARD OF REVIEW

¶ 11. “When this Court reviews a decision by a chancery or circuit court concerning an agency action, it applies the same standard of review that the lower courts are bound to follow.” Hinds County Sch. Dist. Bd. of Trustees v. R.B. ex rel. D.L.B., 10 So.3d 387, 394 (Miss.2008) (citations omitted). There is a rebuttal presumption in favor of the decision rendered by an agency. His Way Homes, Inc. v. Miss. Gaming Comm’n, 733 So.2d 764, 767 (Miss.1999) (citations omitted). Neither this Court nor the chancery court can “substitute its judgment for that of the agency or reweigh the facts of the case.” Id. (citations omitted).
¶ 12. Mississippi Code Section 37-9-113(3)(a)-(c) provides the standard of review in this matter:
The scope of review of the chancery court in such cases shall be limited to a review of the record made before the school board or hearing officer to determine if the action of the school board is unlawful for the reason that it was:
(a) Not supported by any substantial evidence;
(b) Arbitrary or capricious; or
(c) In violation of some statutory or constitutional right of the employee.
Miss.Code Ann. § 37-9-113 (Rev. 2007).

DISCUSSION

¶ 13. Barnes was terminated for her failure to submit to a drug test. Her termination was based on reasonable suspicion pursuant to the District’s policy. Section 4(a) of the Drug and Alcohol Testing Policy defines reasonable suspicion as the “belief by Smith County School District that an employee is using or has used drugs or alcohol in violation of Smith County School District’s policy.” The District’s reasonable suspicion was based on (ii) of that Section: abnormal conduct or erratic behavior while at work, absenteeism, tardiness, or deterioration in work performance.
¶ 14. The policy also provides that an employee may notify the District of recently used prescription or nonprescription drugs before taking the test. At the hearing, Barnes admitted that she had never *68 lain down on the carpet prior to May 6, 2009. She also stated that she was aware of the drug testing policy and that she had in fact refused to take the drug test.
¶ 15. The chancellor ultimately reversed the Board’s decision under Mississippi Code Section 37-9-113(3)(b), finding the decision to be arbitrary or capricious. This Court has stated that an act is arbitrary “when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the will alone, — absolute in power, tyrannical, despotic, non-rational, — implying either a lack of understanding of or a disregard for the fundamental nature of things.” St. Dominic-Jackson Mem’l Hosp., 910 So.2d 1077, 1082 (Miss.2005) (citations omitted). “An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles_” Id. (citations omitted).
¶ 16. At the hearing, the chancellor stated that:
The [cjourt believes that because of the drug and alcohol policy that the school district was correct in asking for the drug test....The [cjourt believes that the actions upon observing a teacher coming in and lying on the floor, with the lights off, would appear to be abnormal behavior. The [cjourt believes that after looking at the entire record concerning the allegations of pain or sickness on behalf of Ms. Barnes, that her actions would not be abnormal based on her pain and discomfit [sic].
¶ 17. In reviewing the drug and alcohol policy, the chancellor took issue with the part of the policy that requires approval from the superintendent before requesting an employee to submit to a drug test. The policy states that:
b. If there is reasonable suspicion that an employee is using or had used drugs or consumed alcohol in violation of Smith County School District’s policy, that employee will be required to submit to a drug and/or alcohol test. The superintendent (or in his or her absence[,j an appointed replacement) must approve in advance all reasonable suspicion testing. If the test result is confirmed positive for drugs or alcohol in violation of Smith County School District’s drug and alcohol policy, the employee will be subject to immediate termination of his or her employment with the District.
5. Any employee who refuses to take a drug and alcohol test will be subject to discipline, up to and including immediate termination of employment.
¶ 18. In regard to the drug and alcohol policy, the chancellor stated that:
The [cjourt believes that Ms. Barnes was wrong when she did not comply with taking the drug test. And the [cjourt believes that the superintendent of education of the school district was wrong when they did not have something in the record showing that in the absence of Mr. Hancock, superintendent of education, that he had appointed a replacement to approve the testing of Ms. Barnes, or some other person whoever that might be, when Mr. Hancock was unavailable and could not make the [reasonable-suspicion] determination.
Therefore, he reasoned that Barnes should not be held to the strict policy if the District is not holding itself to the same standards. The chancellor ultimately found that the Board’s decision was arbitrary or capricious because he found nothing in the record indicating that Superintendent Jimmy Hancock appointed Assistant Superintendent Priscilla Magee to authorize drug testing in his absence.
*69 ¶ 19. We disagree with Barnes’s argument that the Court of Appeals failed to properly consider all relevant evidence that would have precluded termination of Barnes. The Court of Appeals considered evidence from both Barnes and the District regarding her refusal to take the test and her request to take the test later that day. This Court has stated that “[w]hile it is true that there are many punishments that would seem less harsh or more appropriate in this case, we must recognize that the law commits this entire matter to the discretion of the school board.” Covington County Sch. Dist. v. G.W., 767 So.2d 187, 192 (Miss.2000) (citations omitted).
¶ 20. Based on this Court’s standard of review and deference to administrative agency decisions, we find that the Board’s decision was not arbitrary or capricious. The policy explicitly states the consequences for an employee who refuses to take a drug test when requested. Prior to the incident, Barnes had been employed at Taylorsville Elementary for eleven years. At the hearing, Barnes admitted to refusing the test and admitted she was aware of the District’s drug-testing policy. She knew that she could be requested to take a drug test if the District had reasonable suspicion to request a test. She was aware of the potential consequences if she refused to comply. The policy states that “[a]ny employee who refuses to take a drug and alcohol test will be subject to discipline, up to and including immediate termination of employment.” The Board relied on the policy’s clear language when affirming the termination of Barnes’s employment, and its decision was well-reasoned.
¶ 21. On appeal, Barnes also argues that there was no substantial evidence to support the Board’s decision to terminate her employment. “Substantial evidence means more than a scintilla or a suspicion.” St. Dominic-Jackson Mem’l Hosp., 910 So.2d at 1082 (citations omitted). There certainly was more than a scintilla of evidence regarding Barnes’s refusal to take the drug test. The evidence at the hearing revealed that the Board requested Barnes take the drug test after teachers’ reports of Barnes’s abnormal behavior in the classroom. On the way to the drug-testing facility, Barnes signed a statement indicating that she was refusing to take the test. Through its drug and alcohol policy, the District had the prerogative to choose the appropriate punishment, including termination of employment, for Barnes’s refusal to take the drug test when initially requested. Not only was there substantial evidence to support Barnes’s termination, but the District’s decision to enforce its drug and alcohol policy as it is written was not arbitrary or capricious.

CONCLUSIÓN

¶ 22. The Board’s decision to terminate Barnes based on her refusal to take a drug test was not arbitrary or capricious. In addition, the Board’s decision to terminate Barnes’s employment was supported by substantial evidence. Therefore, we affirm the Court of Appeals’ decision, reversing and rendering the decision of the chancery court.
¶ 23. THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE CHANCERY COURT OF SMITH COUNTY IS REVERSED AND RENDERED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., KITCHENS, PIERCE AND KING, JJ., CONCUR. RANDOLPH AND LAMAR, JJ., NOT PARTICIPATING.