# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01814-COA

**CLEVELAND SCHOOL DISTRICT**                                                    **APPELLANT**

**v.**

**LESTER FISHER**                                                                        **APPELLEE**

DATE OF JUDGMENT:                  08/19/2013
TRIAL JUDGE:                       HON. WATOSA MARSHALL SANDERS
COURT FROM WHICH APPEALED:         BOLIVAR COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:            JAMIE FERGUSON JACKS
ATTORNEY FOR APPELLEE:             DANIEL ELLIS MORRIS
NATURE OF THE CASE:                CIVIL - OTHER
TRIAL COURT DISPOSITION:           REVERSED THE SCHOOL BOARD'S
                                   JUDGMENT AND RENDERED A
                                   JUDGMENT FOR THE APPELLEE
DISPOSITION:                       REVERSED AND RENDERED - 03/24/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., ROBERTS AND MAXWELL, JJ.**

**ROBERTS, J., FOR THE COURT:**

¶1. The Cleveland School District decided that it would not renew Lester Fisher's employment as the principal of H.M. Nailor Elementary School. After Fisher's requested nonrenewal hearing, the Cleveland School District Board of Trustees (the Board) upheld Fisher's nonrenewal based on a number of reasons. The Bolivar County Chancery Court reversed the Board's decision and awarded Fisher attorney's fees. The Board appeals. We find that substantial evidence supported the Board's decision declining to renew Fisher's employment. It follows that the chancellor erred when she reversed the Board's decision.

Accordingly, we reverse the chancellor's judgment and render a judgment for the Board.

## FACTS AND PROCEDURAL HISTORY

¶2. Fisher began his employment as the principal of Nailor Elementary School during August 2001. During March 2010, Superintendent Jackie Thigpen informed Fisher that the school district would not be renewing his employment. Fisher requested a nonrenewal hearing. His hearing took place over several days during May 2010. After the hearing, the Board upheld Fisher's nonrenewal because: (1) Nailor had the lowest "Quality of Distribution Index" (QDI)[1] rating in the district; (2) there were consistent problems with student records; (3) Nailor's library was inadequate; (4) Fisher was not properly overseeing the "Reading to Read" program; and (5) Nailor was not clean enough. Fisher argued that his nonrenewal was retaliatory because he would not consent to a magnet school's use of grant funds that he had helped procure solely for Nailor. However, the Board rejected Fisher's argument.

¶3. Fisher appealed the Board's decision. The chancellor found that there was no evidence to support any of the Board's reasons for terminating Fisher. The chancellor discussed Fisher's claim that his nonrenewal was retaliatory. Although the chancellor seemed to agree with Fisher's allegation, the chancellor did not go so far as to find that the Fisher's employment was not renewed because he would not consent to another school's use of grant funds that were intended for Nailor. In any event, the chancellor reversed the

---

[1] According to Thigpen, the QDI rating is calculated based on a point system for each student's score in a number of subjects. Thigpen added that a school's QDI rating determines where a school falls "on the state accountability rating."

Board's judgment and rendered a judgment for Fisher. The Board appeals and claims that the chancellor erred.

## STANDARD OF REVIEW

¶4. "When this Court reviews a decision by a chancery or circuit court concerning an agency action, it applies the same standard of review that the lower courts are bound to follow." *Smith Cnty. Sch. Dist. v. Barnes*, 90 So. 3d 63, 67 (¶11) (Miss. 2012). Accordingly, we are bound to follow the same standard of review as the chancery court. In this case, the chancery court's standard of review is set forth by statute.

> The scope of review of the chancery court in such cases shall be limited to a review of the record made before the school board or hearing officer to determine if the action of the school board is unlawful for the reason that it was: (a) Not supported by any substantial evidence; (b) Arbitrary or capricious; or (c) In violation of some statutory or constitutional right of the employee.

Miss. Code Ann. § 37-9-113(3)(a)-(c) (Rev. 2013). "There is a rebuttal presumption in favor of the decision rendered by an agency." *Id.* "Neither [an appellate court] nor the chancery court can substitute its judgment for that of the agency or reweigh the facts of the case." *Id.*

## ANALYSIS

¶5. The Board argues that the chancellor erred when she found that there was insufficient evidence for the Board's decision to nonrenew Fisher's employment based on problems with student records. The Board notes that during 2008, Thigpen told Fisher that his records were deficient, and she warned him that state auditors were coming to review his records. After reviewing twenty of Nailor's student records, the state auditors found deficiencies in eight or nine of them. Consequently, Nailor was the only school in the district that was not cleared

3

by the Mississippi Department of Education, and the district's accreditation was delayed.

¶6. Twice during 2009, Joy Spain went to Nailor and reviewed student records. She found a number of problems. Among other inadequacies, some of the students' grades and absences in their student folders varied from the information that was in their cumulative folders. Some folders did not contain any grades for a given school year. There were no birth-certificate verifications in some records. There were missing or incomplete cumulative records. And some residency forms had no listed addresses. According to Spain, such problems caused delays assembling a record for college and special-education referrals.

¶7. Assistant Superintendent Roy Jacks testified that Fisher's records were deficient. Multiple Nailor students had duplicate MSIS[2] numbers, which delayed the school's ability to file its report with the state department of education. Additionally, Jacks noted that Nailor's records indicated that the school secretary had been impermissibly administering student discipline. Fisher claimed that he had administered all student discipline. But the records showed that Fisher had been totally absent from school on some of the days that he supposedly had been disciplining students.

¶8. In *Amite County School District v. Floyd*, 935 So. 2d 1034, 1043 (¶21) (Miss. Ct. App. 2005), this Court found that there was substantial evidence for a principal's nonrenewal where there was evidence of inadequate records at the principal's former school. Consequently, this Court found that a chancellor erred when he reversed the Board's judgment. *Id*. "Substantial evidence means more than a scintilla or a suspicion." *Smith*

---

[2] MSIS stands for the "Mississippi Student Information System."

4

*Cnty. Sch. Dist. v. Campbell*, 18 So. 3d 335, 338 (¶17) (Miss. Ct. App. 2009). In this case, there was substantial evidence that Fisher's contract was not renewed because of the inadequate student records at his school. Because there is substantial evidence to support the Board's decision, this Court has no authority to reverse the Board. *Amite Cnty.*, 935 So. 2d at 1039 (¶7).

¶9.     The Board alleged a number of other reasons why Fisher's employment was not renewed. However, it is unnecessary to discuss them. "It is settled law that where the record supports one valid reason to discharge a licensed school district employee, the Board's decision will not be disturbed." *Id*. at 1045 (¶29). And although the chancellor's judgment implies that she believed Fisher's allegation that his nonrenewal was retaliatory for his refusal to consent to another school's use of some of the grant funds that were obtained for Nailor, the chancellor did not go so far as to find merit to Fisher's claim.

¶10.     We find that the chancellor erred when she reversed the Board's judgment. Consequently, we reverse the chancellor's judgment and render a judgment for the Board. It necessarily follows that we reverse the chancellor's judgment awarding Fisher attorney's fees.

¶11.     **THE JUDGMENT OF THE BOLIVAR COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

     **LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**